# EXHIBIT A

 CT Corporation

**Service of Process
Transmittal**
09/01/2021
CT Log Number 540177099

| | |
|---|---|
| **TO:** | Paul Bech<br>Chubb<br>436 Walnut St<br>Philadelphia, PA 19106-3703 |

**RE:** **Process Served in California**

**FOR:** ACE Property and Casualty Insurance Company  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: LOS ANGELES LAUNDRY, INC // To: ACE Property and Casualty Insurance Company |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 21STCV21802 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/01/2021 at 11:01 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/01/2021, Expected Purge Date: 09/06/2021<br><br>Image SOP<br><br>Email Notification,  Incoming Legal  incominglegal@chubb.com |
| **REGISTERED AGENT ADDRESS:** | Amanda Garcia<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                 Wed, Sep 1, 2021

**Server Name:**          Dion Jones

| Entity Served | ACE PROPERTY AND CASUALTY INSURANCE COMPANY |
|---|---|
| Case Number | 21stcv21802 |
| Jurisdiction | CA |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** ACE PROPERTY AND CASUALTY INSURANCE
*(AVISO AL DEMANDADO):* COMPANY; BILL HOLDEN and DOES 1 TO 100

**YOU ARE BEING SUED BY PLAINTIFF:** LOS ANGELES LAUNDRY, INC.;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* YAAKOV LEVY; NELSON
ZAGER

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>21STCV21802 |
|---|---|

Sherri R. Carter Executive Officer / Clerk of Court

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Gene J. Goldsman, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Law Offices of Gene J. Goldsman
501 Civic Center Drive West, Santa Ana, CA 92701                                         (714) 541-3333

| DATE:<br>*(Fecha)* 06/11/2021 | Clerk, by<br>*(Secretario)* R. Perez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* ACE PROPERTY AND CASUALTY INSURANCE COMPANY

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)          [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)

   [X] other *(specify):* CCP 415.95 (business organization, form unknown)
4. [ ] by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 06/11/2021 09:46 AM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Perez,Deputy Clerk

Case 2:22-cv-00301 Document 1-1 Filed 01/14/22 Page 5 of 102 Page ID #:11
21STCV21802

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Gene J. Goldsman, Esq.        SBN: 76554 <br> Law Offices of Gene J. Goldsman <br> 501 Civic Center Drive West, Santa Ana, CA 92701 <br> TELEPHONE NO.:(714) 541-3333        FAX NO.:(714) 541-0456 <br> ATTORNEY FOR *(Name):* Los Angeles Laundry, Inc., et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Los Angeles Laundry, Inc., et al. v. Ace Property And Casualty
Insurance Company, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited      [ ] Limited <br> (Amount            (Amount <br> demanded          demanded is <br> exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | **21STCV21802** <br> JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation <br> (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [X] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[X] punitive

4. Number of causes of action *(specify):* (3) Breach of Covenant of Good Faith and Fair Dealing; Breach of Contract; Fraud

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 10, 2021

Gene J. Goldsman, Esq.
_____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both in a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE: Los Angeles Laundry, Inc., et al. v. Ace Property and Casualty Insurance Company, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Los Angeles Laundry, Inc., et al. v. Ace Property and Casualty Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☒ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Los Angeles Laundry, Inc., et al. v. Ace Property and Casualty Insurance Company, et al. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

| SHORT TITLE: Los Angeles Laundry, Inc., et al. v. Ace Property and Casualty Insurance Company, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:                                                          | ADDRESS:        |
|------------------------------------------------------------------|-----------------|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☒ 11.       | 6032 Shull Street |

| CITY:        | STATE: | ZIP CODE: |
|--------------|--------|-----------|
| Bell Gardens | CA     | 90201     |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: June 10, 2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**



# Superior Court of California, County of Los Angeles

<div style="border:1px solid black;">

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

## Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

## Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may not be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

**How to arrange mediation in Los Angeles County**
Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

    a.   **The Civil Mediation Vendor Resource List**
        Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or
        free (for selected cases) mediation in person or with ODR (by phone or online).

        •  JAMS, Inc.: Case Manager (213) 253-9776 mdawson@jamsadr.com
        •  Mediation Center of Los Angeles: Case Manager: (833) 476-9145 info@mediationLA.org

        These organizations cannot accept every case and they may decline cases at their discretion.
        Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
        NOTE: This service is not available for family law, probate or small claims.

    b.   **Los Angeles County Dispute Resolution Programs**
        https://wdacs.lacounty.gov/programs/drp/
        •  Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions)
           and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
        •  Free or low-cost mediations before the day of trial for these and other case types.
        •  For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the
           day of trial, visit
           http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

    c.   Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

---

3.  **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit www.lacourt.org/division/civil/settlement

Los Angeles Superior Court ADR website: www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By _____ , Deputy
    Elizabeth Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT — MANDATORY ELECTRONIC FILING FOR CIVIL | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) **DEFINITIONS**

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

1     e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a

2     person or entity that receives an electronic filing from a party for retransmission to the Court.

3     In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an

4     agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

5     f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of

6     Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision

7     (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule

8     2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or

9     process attached to or logically associated with an electronic record and executed or adopted

10     by a person with the intent to sign the electronic record.

11     g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place

12     in a hypertext or hypermedia document to another in the same or different document.

13     h) **"Portable Document Format"**  A digital document format that preserves all fonts,

14     formatting, colors and graphics of the original source document, regardless of the application

15     platform used.

16   2) **MANDATORY ELECTRONIC FILING**

17     a) **Trial Court Records**

18     Pursuant to Government Code section 68150, trial court records may be created, maintained,

19     and preserved in electronic format.  Any document that the Court receives electronically must

20     be clerically processed and must satisfy all legal filing requirements in order to be filed as an

21     official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

22     b) **Represented Litigants**

23     Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to

24     electronically file documents with the Court through an approved EFSP.

25     c) **Public Notice**

26     The Court has issued a Public Notice with effective dates the Court required parties to

27     electronically file documents through one or more approved EFSPs.  Public Notices containing

28     effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) **ELECTRONIC FILING SYSTEM WORKING PROCEDURES**

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) **TECHNICAL REQUIREMENTS**

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i)   Depositions;

   ii)  Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv)  Transcripts (including excerpts within transcripts);

   v)   Points and Authorities;

   vi)  Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document accompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

4

2019-GEN-014-00

b) Writs and Abstracts

    Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

    If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

    Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) **PRINTED COURTESY COPIES**

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i)   Any printed document required pursuant to a Standing or General Order;

    ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii) Pleadings and motions that include points and authorities;

    iv) Demurrers;

    v)  Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi) Motions for Summary Judgment/Adjudication; and

    vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) **WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS**

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

6

2019-GEN-014-00

1) **SIGNATURES ON ELECTRONIC FILING**

    For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

    This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association
Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.:   FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|

**The following parties stipulate:**

Date: _____

Date: _____
[TYPE OR PRINT NAME]

Date: _____
[TYPE OR PRINT NAME]

Date: _____
[TYPE OR PRINT NAME]

Date: _____
[TYPE OR PRINT NAME]

Date: _____
[TYPE OR PRINT NAME]

Date: _____
[TYPE OR PRINT NAME]

_____
[ATTORNEY FOR PLAINTIFF]

_____
[ATTORNEY FOR DEFENDANT]

_____
[ATTORNEY FOR DEFENDANT]

_____
[ATTORNEY FOR DEFENDANT]

(ATTORNEY FOR _____

(ATTORNEY FOR _____

(ATTORNEY FOR _____

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY (or party without attorney) | STATE BAR NUMBER | Reserved for Clerk's File |
| TELEPHONE NO.:  FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint:

f. Compensation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

[ ] Whether the case is suitable for the Expedited Jury Trial procedures (see information at _____ under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint.

(INSERT DATE)
(PERFORM)

complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management provided by this Stipulation. A copy of the General Order can be found at _____ under "Civil", click on "General Information", then click on "Voluntary Efficient Litigation Stipulations".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR PLAINTIFF)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR CROSS-COMPLAINANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

PLAINTIFF:

DEFENDANT:

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

1. This document relates to:
   - [ ] Request for Informal Discovery Conference
   - [ ] Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| | | |
|---|---|---|
| NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.: (Optional)
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): | FAX NO. (Optional): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| STIPULATION AND ORDER – MOTIONS IN LIMINE | | CASE NUMBER: |

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

_____
▶ (ATTORNEY FOR PLAINTIFF)

_____
▶ (ATTORNEY FOR DEFENDANT)

_____
▶ (ATTORNEY FOR DEFENDANT)

_____
▶ (ATTORNEY FOR DEFENDANT)

_____
▶ (ATTORNEY FOR _____)

_____
▶ (ATTORNEY FOR _____)

_____
▶ (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What Is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may **not** be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a.  **The Civil Mediation Vendor Resource List**
    If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

    - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
    - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
    - **Mediation Center of Los Angeles** Program Manager Info@mediationLA.org (833) 476-9145

These organizations cannot accept every case and they may decline cases at their discretion. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.

b.  **Los Angeles County Dispute Resolution Programs**
    https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

    Day of trial mediation programs have been paused until further notice.

    **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>**06/11/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____R. Perez_____ Deputy |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV21802 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Michael L. Stern | 62 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  06/11/2021
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By  R. Perez                                    , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br>**Branch Name:** Stanley Mosk Courthouse<br>**Mailing Address:** 111 North Hill Street<br>**City, State and Zip Code:** Los Angeles CA 90012 | |
| **SHORT TITLE:** LOS ANGELES LAUNDRY, INC., et al. vs ACE PROPERTY AND CASUALTY INSURANCE COMPANY, et al. | **CASE NUMBER:**<br>21STCV21802 |
| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of LOS ANGELES. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  One Legal
Reference Number: 16446608
Submission Number: 21LA03681632
Court Received Date: 06/11/2021
Court Received Time: 9:40 am
Case Number: 21STCV21802
Case Title: LOS ANGELES LAUNDRY, INC., et al. vs ACE PROPERTY AND CASUALTY INSURANCE COMPANY, et al.
Location: Stanley Mosk Courthouse
Case Type: Civil Unlimited
Case Category: Contractual Fraud
Jurisdictional Amount: Over $25,000
Notice Generated Date: 06/11/2021
Notice Generated Time: 10:47 am

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Complaint | Accepted |
| Civil Case Cover Sheet | Accepted |
| Summons | Accepted |
| Notice (name extension) | Accepted |

**NOTICE OF CONFIRMATION OF FILING**

**Comments**
Submitter's Comments:

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: One Legal
Contact: One Legal
Phone: (800) 938-8815



LAW OFFICES OF
**GENE J. GOLDSMAN**

GENE J. GOLDSMAN
LINDA JACOBSON-GOLDSMAN
WILLIAM M. VLOSKY*
DIANE B. NEWSOME
EVAN A. BLAIR

ARON M. GOLDSMAN
MICHA H. GOLDSMAN
ALI HOSSEINI
*OF COUNSEL

501 CIVIC CENTER DRIVE WEST | SANTA ANA, CALIFORNIA 92701
PHONE (714) 541-3333 | TOLL FREE (866) 822-2800 | FAX (714) 541-0456
WWW.GJGLAW.COM | LAWYERS@GJGLAW.COM

## <u>E-SERVICE NOTICE TO ALL DEFENDANT(S) AND ATTORNEYS OF RECORD</u>

If defendant(s), through their counsel, wish to electronically serve legal documents to our office in the pendency of this or any other action, they must first attain express consent to do so pursuant to Code of Civil Procedure § 1010.6.

All documents to be electronically served, **<u>except written discovery,</u> <u>must</u>** be served to <u>ESERVICE@GJGLAW.COM</u> **<u>ONLY</u>**. All **<u>written discovery (requests and responses),</u> <u>must</u>** be served to <u>DISCOVERY@GJGLAW.COM</u> **<u>ONLY</u>**. Electronic service **<u>will not be valid</u>** if sent to any other e-mail addresses without express written consent from the owner of the proposed receiving e-mail account. The notice period required for electronic service Code of Civil Procedure § 1010.6 applies to all documents served electronically. Our office also continues to accept service by mail with applicable notice periods.

**IF YOU DESIRE TO SUBPOENA MEDICAL, INSURANCE OR EMPLOYMENT RECORDS, MAKE SURE THAT THE SUBPOENAS ARE DRAFTED BY THE ATTORNEY AND THE RECORDS REQUESTED ARE FOR SPECIFIC BODY PARTS ONLY. DO NOT LET A COPY SERVICE GENERATE THE SUBPOENA THAT IS NOT SPECIFIC NOR PARTICULAR TO THIS PLAINTIFF OR PLAINTIFF'S INJURIES. YOU ARE ON NOTICE THAT WE WILL SERVE OBJECTIONS AND FILE A MOTION TO QUASH, ASKING FOR SUBSTANTIAL COSTS, SANCTIONS AND ATTORNEYS FEES SHOULD YOU NOT HEED THIS WARNING. DO NOT START THE SUBPOENA LANGUAGE WITH "ANY AND ALL" AND LODGE THE LIMITATIONS AT THE END OF THE PAGE AS IT IS VAGUE AND AMBIGUOUS.**

**FURTHER, DO NOT PUT THE WORDS "TO EXCLUDE" CERTAIN RECORDS ON THE SUBPOENA. THE SUBPOENA <u>MUST</u> STATE EXACTLY WHAT RECORDS YOU WANT AND <u>NOT</u> THE RECORDS YOU *DO NOT WANT.***

**IF YOU DISAGREE TO THE PROPOSED SCOPE OF THE SUBPOENAS AS SET FORTH ABOVE, PLEASE ADVISE OUR OFFICE IN WRITING <u>PRIOR</u> TO ISSUING THE SUBPOENAS SO THAT WE CAN MEET AND CONFER.**

Sincerely,

LAW OFFICES OF GENE J. GOLDSMAN

Géne J. Goldsman

Electronically FILED by Superior Court of California, County of Los Angeles on 06/11/2021 09:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
21STCV21802

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Michael Stern

1 | Gene J. Goldsman, Esq. - SBN 76554
LAW OFFICES OF GENE J. GOLDSMAN
2 | 501 Civic Center Drive West
Santa Ana, CA 92701-4059
3 | (714) 541-3333/FAX (714) 541-0456
ESERVICE@GJGLAW.COM
4 | Attorneys for Plaintiff, LOS ANGELES LAUNDRY, INC.; YAAKOV LEVY; NELSON
5 | ZAGER

6

7

8

9 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10 | FOR THE COUNTY OF LOS ANGELES– STANLEY MOSK COURTHOUSE

11

12 | LOS ANGELES LAUNDRY, INC.; | Case No.: 21STCV21802
13 | YAAKOV LEVY; NELSON ZAGER, | Assigned:
| Dept.:
14 | Plaintiffs,

15 | v.

16 | ACE PROPERTY AND CASUALTY | 1. BREACH OF THE COVENANT OF
INSURANCE COMPANY; BILL | GOOD FAITH AND FAIR DEALING IN
17 | HOLDEN and DOES 1 TO 100, | TORT (BAD FAITH);
| 2. BREACH OF CONTRACT / BREACH OF
18 | Defendants. | THE COVENANT OF GOOD FAITH AND
| FAIR DEALING IN CONTRACT;
19 | | 3. PROMISSORY FRAUD / DECEIT

20

21

22

23

24

25

26

27

28

1
COMPLAINT
Los Angeles Laundry, Inc., et al. v. Ace Property And Casualty Insurance Company, et al.

1  Plaintiffs, LOS ANGELES LAUNDRY, INC.; YAAKOV LEVY; NELSON ZAGER,

2  hereby alleges against ACE PROPERTY AND CASUALTY INSURANCE COMPANY;

3  BILL HOLDEN; and DOES 1 TO 100, as follows:

4

5  **FIRST CAUSE OF ACTION**

6  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

7  (As against, against ACE PROPERTY AND CASUALTY INSURANCE COMPANY;

8  BILL HOLDEN and DOES 1 TO 100)

9  1.   Plaintiff is and at all times mentioned herein, was an individual residing in the County of

10  Alameda, State of California.

11  2.   Plaintiff is informed and believes and thereon alleges that Defendant ACE PROPERTY AND

12  CASUALTY INSURANCE COMPANY was at all times herein mentioned, doing business, form of

13  organization unknown, in the County of Los Angeles, State of California as duly licensed insurers

14  doing business in the State of California.

15  3. Plaintiff is informed and believes and thereon alleges that Defendant BILL HOLDEN

16  ("ADJUSTER") was a individual domiciled in State of California, County of Los Angles.

17  3.   Plaintiff is genuinely ignorant of the true names and capacities of Defendants, sued herein as

18  Does 1 through 100, and therefore sues said Defendants by such fictitious names. Plaintiff will amend

19  this Complaint to allege the true names and capacities when the same have been ascertained. Plaintiff

20  is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in

21  some manner for the acts or omissions alleged herein and Plaintiff's injuries as herein alleged were

22  proximately caused by those acts or omissions.

23  4.   At all times herein mentioned, each of the Defendants was the agent, servant, contractor  or

24  employee, joint venture, alter ego, alternative entity, successor, predecessor or alter ego of each of the

25  remaining Defendants, and in doing the things hereinafter alleged was acting within the course and

26  scope of such agency or employment, and/or in the furtherance of a partnership, joint venture, co-

27  conspiracy or under some other legal theory and for the benefit of each and every other defendant.

28

5.     The conduct, acts, and omissions of Defendants, and each of them, as described in this
complaint, was undertaken by Defendant ACE 's officers or managing agents, including Defendant
BILL HOLDEN "ADJUSTER" identified as DOES 1 to 100, who were responsible for claims
operations, underwriting, communications, investigations, and decisions. The conduct of the
managing agents and individuals was therefore undertaken on behalf of Defendant ACE. Further,
Defendants, and each of them, had advance knowledge of the actions and conduct of those
individuals, whose actions and conduct were ratified, authorized, and approved by managing agents
and by other corporate officers, directors, or managing agents whose precise identities are unknown
to Plaintiff at this time. Plaintiff thus identifies and designates those individuals as DOES 1 to 100.

6.     Defendant, ACE 'S corporate headquarters is located out of the State of California, but has
agency offices in LOS ANGELES for selling policies of indemnity insurance and does sell such
policies in and for vehicles and customers in LOS ANGELES County, California, and is an out of
state insurance company registered in California to do business.

7.     Prior to March 17, 2020, LOS ANGELES LAUNDRY, INC.; YAAKOV LEVY; NELSON
ZAGER purchased an insurance policy for business owners insurance, D95321306, including
business owners insurance from Defendants, and each of them, including Plaintiff's Levy and Zager,
which policy was in effect on the date of the incident November 4, 2020, and had been in effect prior
to the November 4, 2020 incident, and under which Plaintiffs business LOS ANGELES LAUNDRY,
Inc. was insured.

8.     The force and effect of said contract with Defendants, and each of them, required the payment of
an underinsured motorist benefits for a total amount for one person of up to $100,000.00 damages.
All premiums due under said contract were paid to Defendants, and each of them, at all relevant times
herein, and all material obligations thereunder were performed by or on behalf of Plaintiff.

9.     Defendant, ACE, represented in the aforementioned contract of insurance that Defendants,
and each of them, would provide compensation to an insured, including Plaintiff, in the event of a
loss caused by a business loss due to vandalism, fire, or other covered loss to the same extent as
would be liable to plaintiff, that is up to a total limit of $3,000,000 for Business and additionally
Personal Property Loss and $1,120,000 on the building alone.

1   10.    On November 4, 2020 incident Plaintiff was at home sick, with covid-19 laying in bed when

2   the security guard informed him that there was a break in at the facility at 6032 Shull Street Bell

3   Gardens, CA 90201. On that date plaintiff's business premises was heavily vandalized and machines

4   were destroyed, resulting in total loss of several heavy pieces of equipment and resulting in the

5   destruction of the ability of the business to complete its contracts and work orders. This vandalism

6   resulted in loss of business income and business property and loss of goodwill toward the business

7   for Los Angeles Laundry, Inc. One vandal was caught and released on bail the next day, his identity

8   remains unknown at this time plaintiff retains the right to amend this complaint once his name

9   becomes known.

10   11.    On or about November 5, 2020, Plaintiff's notified ACE by letter that the Company Los

11   Angeles Laundry Inc. was damaged and needed to be compensated for a covered business loss.

12   12.    All the way until the time of this complaint, Plaintiffs, through their counsel, sent to ACE 'S

13   employees and its employee including BILL HOLDEN, and counsel reputable, and convincing

14   evidence of Plaintiff's Business losses proximately caused by the November 4, 2020 Burglary and

15   Vandalism at the Bell Gardens Location 6032 Shull Street. This evidence included detailed business

16   loss reports, accounting books, assessments, bills, and invoices and pending work orders from

17   extremely reputable and respected accounting personnel within the California finance community.

18   The business loss evidence given to Defendants, and each of them, showed that Plaintiff had among

19   other business losses, up to and above $3,000,000 in business equipment damage, loss of income, and

20   loss of personal property. All of Plaintiffs accountings agreed on the seriousness of the condition

21   which was proximately caused by the Burglary and Vandalism.

22   13.    All through the case, and continuing through the litigation, Defendants, and each of them,

23   unjustifiably, negligently, and in bad faith refused and delayed in paying anything of said claim, by

24   failing to investigate properly and setting up false defenses and failed to agree to pay the business

25   losses  fairly and to pay the claim despite having been in a position to have obtained convincing

26   knowledge of the circumstances of the accident and Plaintiff's business losses and lost income, and

27   there was no question of liability.

28

14.    It was clear early in the claims process that Plaintiff was deserving of some payment of any amount of the policy at all, but rather than pay or tender an offer commensurate with his losses, Defendants, and each of them, tormented Plaintiff through litigation, proximately causing and requiring him to go through the expense of thousands of dollars in litigation costs to his damage, in addition to proximately causing him the anguish of litigation.

15.    Defendants, and each of them, in derogation of their duty to their policy holder, the Plaintiff, refused to make a reasonable good faith offer given all the supporting accounting evidence they possessed and made the Plaintiffs present on multiple occasions in total, despite having received such evidence several times over. Defendant refused to provide Plaintiff with a good faith offer.

16.    Defendants, and each of them, breached their duty of good faith and fair dealing owed to Plaintiff in the following respects:

a) Failing unreasonably and in bad faith to make a good faith offer and benefit payments to Plaintiff at a time when Defendants, and each of them, knew that Plaintiff was entitled to those benefits under the terms of the policy, and knowing the business owners insurance underwriter was liable to Plaintiff for any damages Plaintiff incurred as a result of the accident, and should pay a significant amount of the policy and it was reasonably clear that the Plaintiff's damages were easily worth a significant amount of the policy limits.

b) Unreasonably delaying payments to Plaintiff in bad faith, despite Defendants', and each of them, knowledge that Plaintiff's claim for benefits under the policy was valid. Defendants, and each of them, were fully aware that their liability to pay a significant amount of the available policy limits was clear.

c) Failing reasonably and promptly to investigate and process Plaintiff's claim for benefits, in that Defendants, and each of them, in the exercise of reasonable diligence, should have known that Plaintiff was injured and damaged to a significant amount of the available policy limits benefits, and that the underinsured motorist was liable to Plaintiff for any damages Plaintiff incurred as a result of the accident.

d) Failing to make a good faith effort to obtain prompt, fair, and equitable settlement of Plaintiff's claims for benefits after the liability of Defendants, and each of them, had become reasonably

1    clear, in that Plaintiff was an insured under the policy. Defendants, and each of them, well knew that

2    the Business owners were owed the policy and ACE thereby was liable for the insurance money and

3    that Plaintiff's severe business losses clearly exceeded the $3,000,000 business and personal property

4    loss policy and a significant amount of the available policy limits of Plaintiff's insurance policy, and

5    instead of paying the claim, went about building a false defense and failed to make a good faith

6    settlement to Plaintiff prior to the litigation when they could not claim they did not have all of the

7    Plaintiff's business loss and financial evidence.

8          e) Tormenting Plaintiff to go through the expense of thousands of dollars in litigation costs, in

9    addition to the mental anguish associated with the refusal to pay reasonable sums, and with subsequent

10   litigation, and further caused Plaintiff to incur extreme financial stress and anxiety because the benefits

11   due were required to assist Plaintiff during this time of business loss and financial emergency as well

12   as when the Plaintiff's were suffering from the long-term effects of Covid-19 for several months.

13         f) Defendants, and each of them, have breached their duty of good faith and fair dealing owed

14   to Plaintiff by other acts or omissions of which Plaintiff is presently unaware, which will be shown

15   according to proof at time of trial.

16   17.    Had Defendants, and each of them, conducted a reasonable investigation of the claim,

17   Defendants, and each of them, would have learned, *inter alia*, that Plaintiff was damaged by an "at by

18   burglary and vandalism for to the extent of a significant amount of the available policy limits. Instead

19   Defendants, and each of them, did not ever make a reasonable offer after a valid demand, and delayed

20   and procrastinated at every opportunity. Defendant never provided Plaintiff with a good faith offer or

21   at any time during the business loss claim period. These actions were intentional and were undertaken

22   in an effort to discourage Plaintiff from pursuing their business owner's loss claim for damages in an

23   attempt to deprive Plaintiffs of the benefits due to them under their business owner's insurance policy.

24   18.  Plaintiff is informed and believes and upon such information and belief alleges that Defendants,

25   and each of them, in furtherance of their scheme to defraud and deprive Plaintiff of benefits under the

26   insurance policy, set up defenses based on dubious and unqualified orthopedic expertise.

27   19.    One of the reasons for denying Plaintiffs' claim for benefits without proper cause, when

28   Defendants, and each of them, knew such claims to be just, reasonable, and due Plaintiff under said

policy of insurance, was to place Plaintiff in the disadvantageous position of needing funds to support

himself while injured, thereby placing Plaintiff in a position wherein he would be forced to beg for,

and accept, an offer settling Plaintiff's claim for underinsured motorist benefits in an amount

substantially less than the true amount owed to Plaintiff under the terms of said policy of insurance.

20.     As a direct result of Defendants, and each of them, unreasonably delaying payments to

Plaintiff in bad faith, failing to reasonably and promptly investigate and process Plaintiff's claim

for benefits, and failing to make a good faith effort to obtain prompt, fair, and equitable

settlement of Plaintiff's claim for benefits without proper cause, Plaintiff was forced to wait for

payments due and was forced to proceed with a law suit in bad faith incurring the associated

costs and emotional distress associated with such proceeding and was denied benefits under the

policy to which he was entitled in a time of medical and emotional need.

21.     As a proximate result of the unreasonable and bad faith conduct mentioned above, without

proper cause, Plaintiff has suffered economic and consequential damages in an amount to be

shown at trial. These damages include, but are not limited to, significant economic loss both as a

result of the subject incident and during the interim period while Defendants, and each of them,

were withholding benefits without proper cause; additional costs for health care providers; and

all other economic and general damages in a sum to be determined at trial.

22.     As a further proximate result of the wrongful conduct of Defendants, and each of them,

without proper cause, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to

Plaintiff's general damages in a sum to be determined at the time of trial.

23.     The conduct of Defendants, and each of them, described in this complaint of deliberately

and calculatingly failing to provide the compensation which they knew was due to Plaintiff,

scheming to conspire and defraud Plaintiff, and committing actual fraud against Plaintiff, and

further intentionally inflicting emotional distress upon Plaintiff, offering a settlement of half the

policy only when threatened with a bad faith suit and in light of compelling medical evidence

supporting that Plaintiff was entitled to the a significant amount of the available policy benefits,

1    while well knowing their policy holder and insured was entitled to policy limits, constitutes malice

2    and oppression under California Civil Code section 3294, in that it was done with the intent to vex,

3    injure, or annoy and with conscious disregard of the Plaintiff's rights, and deliberately in bad faith,

4    to deny him the benefits to which he was entitled under the policy. All the aforesaid acts were

5    performed in an effort to discourage Plaintiff from seeking the compensation due to him at a time

6    Defendants, and each of them, knew that the Plaintiff was financially vulnerable. Thus, Plaintiff

7    is entitled to punitive and exemplary damages in an amount appropriate to punish and make an

8    example of Defendants, and each of them.

9    24.    Plaintiff has been required, in order to litigate his rights and prosecute this action, to retain

10   attorneys and incur attorneys' fees and litigation expense in an amount to be proved.

11   

12   25.    Because of the refusal of Defendants, and each of them, to pay reasonable benefits, Plaintiff

13   was forced to expend additional attorney's fees, expert witness fees, and expenses.

14   

15                          **SECOND CAUSE OF ACTION**

16          **BREACH OF CONTRACT / BREACH OF THE COVENANT OF GOOD FAITH**

17                          **AND FAIR DEALING IN CONTRACT**

18    (As Against **ACE PROPERTY AND CASUALTY INSURANCE COMPANY; BILL HOLDEN**

19                          and DOES 1 to 100)

20   26.    Plaintiff hereby incorporates by reference all prior and subsequent paragraphs of this complaint

21   as if set forth in full herein.

22   27.    Plaintiff, by paying the premiums entered into the written business owner's insurance policy

23   contract offered him by Defendants, and each of them, prior to and on or about March 17, 2020.

24   Plaintiff was involved in an business loss incident on or about November 4, 2020.  Plaintiff retained

25   counsel on or about May 2021 thereafter, in, related to the investigation and settlement of plaintiff's

26   Business loss claims with defendants, and each of them, in hopes to avoid Business Loss arbitration.

27   Thereafter, plaintiff wrote and made demands with his insurance company claim KY20K2927210,

28   Defendant, ACE.  Plaintiff engaged in over a three-year period of cooperation with defendants, and

1  each of them during 2020, 2021 and almost 2022.   During this time period, there were regular and

2  numerous letters and communication between plaintiff/Plaintiff's counsel and insurer including

3  adjuster BILL HOLDEN and Counsel for Defendant GENE WEISBERG, Esq. for Defendant, ACE.

4  Plaintiff provided many facts and evidence of the accident occurrence, including evidence of

5  Business loss from the Burglary and Vandalism which would invoke plaintiff's Business Owners

6  insurance policy coverage for plaintiffs and each of them.

7  28.   During 2020, and well into 2021, ACE PROPERTY AND CASUALTY INSURANCE

8  COMPANY and Defendant adjuster BILL HOLDEN ignored and refused to pay in full, plaintiff's

9  "no-fault" "BUSINESS LOSS PERSONAL AND PROPERTY LOSS DAMAGE –pay" money due

10 to them under the plaintiff's ACE insurance policy after demand was made and business loss bills

11 were sent to ACE.

12 29.   Plaintiff's demands for the significant remaining portion of the policy limits or benefits were

13 denied by ACE after a demand.  Plaintiff was thereafter compelled to file a lawsuit against ACE and

14 ADJUSTER in Bad Faith.

15 30.   At all times relevant herein, Plaintiff and other insureds under the Business Owners insurance

16 policy performed all material duties and obligations required under the insurance policy except those

17 that were excused or discharged.  This included making all payments due to defendant, ACE and

18 ADJUSTER, under the insurance policy.  Defendants and each of them, accepted policy premium

19 payments from plaintiff and other insureds identified within the policy, made on behalf of plaintiff, as

20 a named policy insured.

21 31.   **Defendants, and each of them, breached their obligations and covenant of good faith**

22 **and fair dealing, in contract, under the insurance policy, including the breach of all of the**

23 **insurance policy contract's express terms, implied at law terms and implied in fact terms,**

24 **including all terms pursuant to *Insurance Code* section 11580.2 *et seq*., in the following manner:**

25     a) By failing to conduct a reasonable, full, prompt, timely, thorough, and complete

26 investigation with reasonable diligence into the facts and circumstances of the incident, and insurance

27 claim made by Plaintiff throughout the years of 2020; 2021 and majority of 2021.

28

1      b)  By unreasonably delaying in processing and investigation of the claim KY20K2927210
2  or paying benefits due to Plaintiff under the policy;

3      c)  By unreasonably delaying in processing and investigation of the Business loss payments
4  benefits due to Plaintiff under the policy;

5      d)  By unreasonably failing to adequately communicate and negotiate a reasonable settlement
6  agreement, thus breaching a contractual duty to discuss the claim to which the implied covenant of
7  good faith and fair dealing in contract, properly attaches;

8      e)  By unreasonably investigating, delaying and denying Plaintiff's claim based on standards
9  known by the insurer to be improper;

10      f) By unreasonably failing to pay a prompt and reasonable settlement offer to Plaintiff when
11  Defendants were in possession of sufficient evidence to support it and do such;

12      g)  By failing to settle and pay plaintiff's claim and business property loss medical payments
13  claim in a timely and prompt manner, and instead withheld payment of these claim benefits until
14  plaintiff had paid for a costly investigation for that was unnecessary at defendants' insistence.

15      f)  By doing each of the acts or omissions described within all other causes of action of this
16  complaint, which were contractual promises, duties and obligations by the insurance policy contract's
17  express terms, implied at law terms and implied in fact terms including *Insurance Code* section
18  11850.2, 790.03 and California law.

19      g)  Subdivision (a) – through (f), and other obligations, duties and terms described and
20  referenced (that were violated), as described throughout this complaint, were in fact material terms of
21  the insurance policy contracts' **express terms, implied at law terms and implied in fact terms,**
22  including all terms pursuant to *Insurance Code* section 11580.2 *et seq.*

23  32.     Defendants, and each of them, failed to, and refused to conduct a reasonable, fair, timely and
24  thorough investigation into the facts and circumstances of the Plaintiff's Business Owners Property
25  Loss claim asserted, but instead wished to and did try to create new "facts," failed to consider the
26  severity of the business losses suffered by Plaintiff when in possession of a more than adequate
27  mountain of plaintiff's good accounting evidence of financial loss and causation, from reputable
28  accountants, to support the seriousness of Plaintiff's losses, wrongfully conspired to deny Plaintiff

1    benefits due under the insurance policy; and offered no reasonable settlement whatsoever when they

2    knew the case was worth a significant portion more than of the remaining $3,000,000.00 policy limits

3    to relieve Defendants, and each of them, from having to pay promptly, fairly and reasonably benefits

4    under the insurance policy. As a proximate result of the unreasonable, wrongful and bad faith conduct

5    mentioned above, and by the breach of said insurance policy contract, Plaintiff has suffered mental,

6    physical, economic, and other damages in an amount to be shown at trial.  By engaging in the acts

7    and omissions alleged throughout this complaint, defendants, and each of them breached the

8    insurance policy contract terms and the contract's covenant of good faith and fair dealing, *in contract.*

9    33.  As a direct and proximate result of the breach by Defendants, and each of them, of their

10    obligations under the insurance policy, Plaintiff has been damaged as follows:

11        a) Plaintiff was forced to proceed with binding arbitration and incur the associated costs and

12    emotional distress associated with such proceedings, including attorneys and expert fees and he was

13    denied benefits due under the policy in a time of medical need, and physical pain.

14        b) Plaintiff was forced to suffer other economic and consequential damages as referenced

15    herein and throughout this complaint in an amount to be shown at trial.

16

17 <p align="center">**THIRD CAUSE OF ACTION**</p>

18 <p align="center">**PROMISSORY FRAUD / DECEIT**</p>

19 <p align="center">(*Civil Code* Sections 1709; 1710(4)); *Miller v. National American Life Ins. Co. of California* (1976)</p>

20 <p align="center">54 Cal App. 3d. 331; *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal App. 2d. 932)</p>

21 <p align="center">(As Against **ACE PROPERTY AND CASUALTY INSURANCE COMPANY; BILL**</p>

22 <p align="center">**HOLDEN and** DOES 1 to 100)</p>

23    34.  Plaintiff hereby incorporates by reference all prior and subsequent paragraphs of this complaint

24    as if set forth in full herein.

25    35.  At the time Defendants, and each of them, entered in the Policy of Insurance Contract, with

26    Plaintiff as an insured, and each time they renewed the policy, Defendants, and each of them,

27    represented to the policy holders and beneficiaries <u>within</u> Defendants' standardized insurance policy

28    contract's express and implied terms, including plaintiff, with regard to underinsured / uninsured

1  motorists coverage, that they would do the following in the event of a claim: that Defendants, and

2  each of them, would pay to the beneficiary sums that the hit and run or underinsured or uninsured

3  motorist would be obligated to pay to the beneficiary that they would not unreasonably delay

4  payment of the claim; they would timely, fairly and reasonably investigate the claim; engage in

5  claims handling practices that comported with the standard of care and that were reasonable and fair;

6  they would communicate with plaintiff and discuss reasonable good faith offers given the facts and

7  evidence; that they would not violate the Covenant of Good Faith and Fair Dealing implicit in the

8  Policy of Insurance; that they would conduct a timely, proper, fair and complete investigation of the

9  accident and the injuries and plaintiff's claim; that they would not manufacture a genuine dispute,

10  when no such genuine dispute existed; and they would not, without good cause and a good faith

11  belief, require Plaintiff to arbitrate.

12  36.    In truth and fact at said time, when Plaintiff and other identified insureds entered into the

13  standardized insurance policy contract with defendants and each of them, Defendants did not intend

14  to pay any Plaintiff all sums that the uninsured or underinsured or hit and run motorist would be

15  legally liable to pay, and in truth and fact, Defendants, and each of them, at that time, intended to pay

16  the Plaintiff far less than the sum to which the Plaintiff would be entitled; and in truth and fact,

17  Defendants, and each of them, did not intend to pay reasonably and promptly any sums due Plaintiff,

18  but intended to delay unreasonably any sums to which Plaintiff would be entitled, even including

19  forcing Plaintiff to arbitrate unnecessarily in order to obtain the money which was legitimately due;

20  and in truth and fact, Defendants, and each of them, at that time, intended to violate the Covenant of

21  Good Faith and Fair Dealing implicit in the Policy of Insurance by unreasonably undervaluing the

22  amount due Plaintiff, and by having their agents make unreasonably low settlement offers known as

23  "low ball" and "nuisance value" offers, or no offer at all, and refusing to pay medical payment sums

24  long overdue unless Plaintiff would accept an unreasonably lowball offer as complete settlement; and

25  in truth and fact at said time, Defendants, and each of them, did not intend to conduct a proper and

26  fair investigation, but intended to twist the facts of the accident in favor of Defendants, and each of

27  them; and would use tactics to justify dragging out the claims process and forcing Plaintiff to litigate

28  in Bad Faith to protect his rights under the insurance contract.

1    37.    At the times Defendants, and each of them, entered into the standardized Policy of Insurance

2    Contract, and each date and time they renewed the policy.  At all relevant times, defendants, and each

3    of them, including ACE, undertook obligations under the policy without intent to perform them, thus

4    misrepresenting defendant insurance carrier and its employees/agents' state of mind **within the**

5    **policy terms**, duties and obligations as promised **within the insurance policy**.  Defendants, and each

6    of them (including ACE & BILL HOLDEN "ADJUSTER"), by issuing the policy **D95321306**,

7    impliedly represents its then-willingness to perform those express and implied contract terms.  No

8    additional affirmative representations that it will be performed need be shown.  Defendants, by

9    engaging in the wrongful acts and omissions described throughout this complaint, including its

10   claims handling practices, its' post-claim practices related to the claims handling process evidenced

11   through subsequent conduct, including improper claims investigation, processing, evaluation and

12   payment and related delays and deficiencies, by defendants and each of them, an intent not to

13   perform promises under the insurance policy contract.  Defendants delayed payment based on

14   inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the

15   amounts legitimately payable and numerous other tactics, may breach the implied covenant because

16   they frustrate the insured's right to receive the benefits of the contract in 'prompt compensation for

17   losses. ***Defendants and each of them had no intent to perform its express and implied policy***

18   ***contract promises made within the policy terms at the time the policy was drafted, sold and issued***

19   ***to plaintiff/insured.*** (see, *Beckwith v. Dahl* (2012) 2005 Cal. App. 4th 1039 [*"the falsity of [a]*

20   *promise is sufficiently plead with a general allegation the promise was made without intention of*

21   *performance."* (*Id.* at 1060)]).

22   38.    The nature of fraud and **fraudulent deceit** involving a standardized form adhesion insurance

23   contract or *form contract-insurance policy* arises from Defendants' that offered to Plaintiff and other

24   named insureds on plaintiff's ACE  business insurance policy, and other members of the general

25   public the insurance policy at issue, on a take-it-or-leave-it basis.  At all times relevant herein, there

26   was no intent to by the insurer to perform on contractual promises made **within the insurance policy**

27   **terms** at the time the policy was issued to plaintiff and other insureds covered by the policy.    ACE

28   and BILL HOLDEN "ADJUSTER",  has engaged in promissory fraudulent deceit under California

1 | law pursuant to *Miller v. National American Life Ins. Co. of California* (1976) 54 Cal App. 3d. 331;
2 | *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal App. 2d. 932; *Civil Code* sections 1709,
3 | 1710  subdv. (4) and other California law.
4 | 39.     The fraudulent misrepresentations and false promises made by Defendants and each of them,
5 | including BILL HOLDEN "ADJUSTER" at the time the policy was issued to cover Plaintiff and at
6 | each renewal period, were made as express and implied terms and obligations in the insurance policy
7 | and those express and implied at law that become part of the insurance policy.    Pursuant to *Archdale*
8 | *v. American Intern. Special Lines Ins. Co.* (2007) 154 Cal. App. 4th 449; *Comunale v. Traders*
9 | *General Ins. Co.* (1958) 50 Cal. 2d 654, 658-659; *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.
10 | App. 4th 1225, .*California Insurance Code* and other California law, these included but are not
11 | limited to:
12 |          a)  Obligations and duty by defendants and each of them of an obligation of good faith and
13 | fair dealing toward insured, plaintiff;
14 |          b)  An obligation and duty by Defendants, and each of them, would not do anything which
15 | would injure the right of insured, plaintiff, to receive benefits of the agreement;
16 |          c)  An obligation and duty by Defendants, and each of them, to give the interests of the
17 | insured, plaintiff, at least as much consideration as it gives to its own interests, when determining
18 | whether to settle with insured Plaintiff;
19 |          e)  An obligation and duty of defendants and each of them to communicate with plaintiff to
20 | honestly, diligently, fairly, timely, reasonably and thoroughly investigate and evaluate information
21 | available with regard to insured-plaintiff's claim, and make timely and reasonable settlement offers to
22 | plaintiff and act reasonably to resolve the claim and affirmative effort to discuss and resolve the
23 | plaintiff's claim before an arbitration under the policy was necessary, so as to avoid further costs,
24 | expense by plaintiff/insured (see, *Brehm v. 21st Century Ins. Co.* (2008) 166  Cal. App. 4th 1225,
25. | 142).
26 |          d)  An obligation and duty of defendants, and each of them, to accept a reasonable settlement
27 | offer of insured Plaintiff's claim;
28 |

1      e)    An obligation and duty of defendants, and each of them, to accept a reasonable

2  settlement offer of insured plaintiff's claim without regard to such factors as the limits imposed by

3  the policy, a desire to reduce the amount of future settlements or a belief that the policy does not

4  provide insured/plaintiff coverage.

5  40.    Based on the existence of these duties and obligations, both express and implied as "promises"

6  from the insurance carrier within defendant's (non-negotiable, adhesion "form") insurance policy

7  contract, implied terms and express terms, the insured/plaintiff reasonably and justifiably relied on

8  these express and implied promises from defendants and each of them, when the policy was first

9  issued and at each and every renewal period for the plaintiff's policy.   The existence of these

10  promises made the adhesive and non-negotiable nature of the Business insurance policy a realistic

11  and reasonable contract to enter within the State of California.

12  41.    Defendants, and each of them, represented within the Policy's express, implied at law and

13  implied in fact policy terms and promises, to the policy holders, named insured's beneficiaries,

14  unnamed beneficiaries and permissive users of a vehicle under the Policy **D95321306** (which

15  included plaintiff), with regard to uninsured and underinsured motorist coverage, that Defendants and

16  each of them, would do the following in the event of a claim: that Defendants, and each of them,

17  would pay to the beneficiary sums that the uninsured or underinsured motorist would be obligated to

18  pay to the beneficiary less any sums previously paid by the other motorist and that they would not

19  unreasonably delay payment of the claim; that they would not violate the Covenant of Good Faith

20  and Fair Dealing implicit in the Policy of Insurance; that they would conduct a timely, proper,

21  reasonable and fair investigation of the accident and the injuries; they would retain expert

22  professionals to timely, fairly and reasonably investigate plaintiff's **claim KY20K2927210** during the

23  claims handling process, which defendants and each of them were obligated under the insurance

24  policy contract to do; they would negotiate in good faith with plaintiff as to a fair and reasonable

25  settlement offer given the facts and evidence, including facts and evidence that plaintiff provided

26  defendants and each of them; that they would not manufacture a genuine dispute, when no such

27  genuine dispute existed; and they would not, without good cause and good faith belief, require

28  Plaintiff to unnecessarily arbitrate with great financial and emotional cost to plaintiff.  In truth and

1  fact at said time, Defendants, and each of them, did not intend to pay any Plaintiff all sums the

2  uninsured or underinsured motorist would be legally liable to pay, and in truth and fact, Defendants,

3  and each of them, *at that time*, intended to pay the Plaintiff far less than the sum to which the

4  Plaintiff would be entitled; and in truth and fact, Defendants, and each of them did not intend to pay

5  reasonably and promptly any sums due Plaintiff, or to reasonably, fairly, time and in good faith,

6  perform their duties and obligations pursuant to the terms of the insurance policy contract, but

7  intended to delay unreasonably any sums to which Plaintiff would be entitled, engage in bad faith,

8  unreasonable claims handling practices once a claim was made on the policy as discussed throughout

9  this complaint, and even including forcing Plaintiff to file a lawsuit in bad faith in order to obtain the

10 money which was legitimately due; and in truth and fact, Defendants, and each of them, at that time,

11 intended to violate the Covenant of Good Faith and Fair Dealing in contract and in tort, implicit in the

12 Policy of Insurance contract by unreasonably undervaluing the amount due Plaintiff, failing to timely,

13 properly, reasonably and fairly investigate the claim, and by having their agents make unreasonably

14 low settlement offers known as "low ball" and "nuisance value" offers, unless Plaintiff would accept

15 an unreasonably lowball offer as complete settlement; and in truth and fact at said time, Defendants,

16 and each of them, did not intend from the outset, to conduct a proper, timely and fair, complete

17 investigation, or make or communicate any reasonable and fair good faith settlement offers to

18 plaintiff, but intended to retain only expert witnesses for the accident facts, who they knew would

19 attempt to twist the facts of the accident in favor of Defendants, and each of them, and would retain

20 physicians and other experts and expert witnesses, including those identified herein, at a time period

21 indicating defendants' unreasonable, unfair and bad faith Business Property Loss and Personal

22 Property claims handling practices and bad faith conduct, who defendants knew would minimize any

23 of Plaintiff's injuries, even if they knew themselves that they were much greater; and would use the

24 findings of such insincere experts to justify dragging out the claims process and/or forcing an

25 unnecessary lawsuit that would expose plaintiff to much financial cost and emotional stress.

26  42.    Thereafter, pursuant to their intentions to breach the Policy of Insurance, when Plaintiff made

27 his claim for benefits, Defendants, and each of them, in accordance with their scheme to deprive him

28

1    of the benefits of the policy, did, and omitted to do, the acts described throughout this complaint,

2    including but not limited to:

3       a)  Refusing to pay Plaintiff the amount the Insurance Company ACE was legally liable to

4           pay, but offered none of the $3,000,000.00 policy, which Defendants never tendered.

5       b)  Unreasonably delaying, withholding and making offers, and only paying anything after a

6           harsh letter from Plaintiff's counsel threating a lawsuit in bad faith;

7       c)  Unreasonably conducting an improper, untimely and unfair investigation at a timeframe

8           which also indicated unreasonable, unfair, and bad faith claim investigation and handling and

9           retention of a claim expert witness investigation who defendants knew were retained only to

10          twist the facts of the accident and wrongfully and unreasonably minimize the severity of

11          Plaintiff's injuries and dispute Business Property and Personal Property Loss liability where

12          no genuine dispute existed (see, *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App. 4th 1225;

13      d)  Failing to negotiate in good faith and communicate with plaintiff a fair, reasonable and

14          timely settlement payment offer;

15      e)  By failing to settle and pay plaintiff's Business and Personal Property Loss

16          payments claim in a timely and prompt manner and instead withheld payment of these

17          claim benefits until plaintiff had sent Defense a letter threatening a Bad Faith Law Suit;

18      f)  Unreasonably, willfully and intentionally investigate, evaluate and handle and discuss

19          plaintiff's claim so that no agreement to settle the claim before the cost and expense of a Bad

20          Faith Law suit would be imposed on plaintiff, would be realistically possible (see, *Brehm v.*

21          *21st Century Ins. Co.* (2008) 166 Cal.App. 4th 1225, 1242);

22      g)  Forcing an unnecessary and costly Bad Faith Lawsuit on Plaintiff when they knew that

23          Plaintiff was entitled to most or all the remaining policy limits of $3,000,000.00.

24      h)  Refusing to timely, fairly and reasonably pay Plaintiff all of his no-fault, business loss

25          payment benefits under the policy.

26   43.  All such aforementioned acts, omissions and representations constituted **"fraudulent deceit"** as

27   defined in *Civil Code* sections 1709 and 1710(4) and California case law. Defendants and each of

28   them, willfully deceived Plaintiff, with intent to induce Plaintiff to alter his position so as to buy,

1   accept and/or rely on the Defendants' insurance policy contract terms, obligations, duties and

2   coverage during his time of calamity, which was offered by Defendants and each of them, to protect

3   plaintiff and other insureds within the insurance policy contract, pursuant to the express, implied in

4   fact and implied at law policy terms and promises of the policy and assuming such terms, promises

5   and obligations stated throughout this complaint would be carried out as stated in the insurance policy

6   contract and those terms, promises, duties and obligations required by *Insurance Code* Sections

7   11580.2, *et seq.*, 790.03 *et seq.*, and other California law.

8       44.      Pursuant to *Civil Code* sections 1710(4) and 1709, *Miller v. National American Life Ins. Co.*

9   *of California* (1976) 54 Cal App. 3d. 331; *Wetherbee v. United Ins. Co. of America* (1968) 265 Cal

10   App. 2d. 932, Defendants, and each of them including BILL HOLDEN "ADJUSTER" made **"false**

11   **promises"** in the standardized insurance policy contract because Defendants, and each of them,

12   entered into the agreement each time, including prior to and on October 15, 2018 (date the insurance

13   policy went into effect), to follow the policy's terms and obligations of the agreement **but instead,**

14   **actually had the intention of performing only to the extent that would be to Defendants' benefit**

15   **such that Defendants intended the contract be carried only in such ways as to be to the**

16   **Insurance Company and Defendants' benefit and not in such ways to be to the policy**

17   **holders/insured's benefit**.  Thus Defendants, and each of them, through the insurance policy

18   contract, made <u>promises</u>, to Plaintiff and other identified insureds, without any intention of

19   performing them each time they renewed the insurance policy.

20   45.      The aforementioned insurance policy contract's <u>promises</u> and representations to Plaintiff and

21   other identified policy insureds, by Defendants, and each of them, were deceptive and in fact false

22   and untrue when made to Plaintiff and the other insureds named as referenced with the insurance

23   policy contract prior to and at the time of policy issuance.

24   46.      The aforementioned <u>promises</u> and representations by Defendants, and each of them, were in

25   fact material.

26   47.      Defendants and each of them knew the <u>promises</u> and representations were false and untrue

27   when they were made within the policy contract terms and obligations both express and implied, and

28   would never be carried out in compliance with the insurance policy contract implied and express

1  terms.  At all times relevant herein, Defendants, and each of them including BILL HOLDEN

2  "ADJUSTER" and ACE, engaged in an absolute unwillingness even to attempt (a promised)

3  performance.   Defendants made the promises and representations intentionally and willfully.

4  Defendants, and each of them, misrepresented their own state of mind at the time the promises and

5  representations were made within the insurance policy contract as both express and implied within

6  the policy language and obligations under California law. 50.     Pursuant to *Miller v. National*

7  *American Life Ins. Co.* (1976) 54 Cal. App. 3d 331, at all times defendants and each of them acted to

8  induce plaintiff/insured to alter his position and enter the insurance policy contract and renewal of

9  such policy contract.  Plaintiff/insured did change his position to his detriment in reliance on the

10  policy promises.  Such reliance was reasonable by plaintiff/insured.   At all times the defendants'

11  making of the policy promises **within the policy contract** were with an intent to deceive

12  plaintiff/insured.   At all times the defendants' making of the insurance policy contract promises

13  were made with the intent to induce the plaintiff/insured to whom it was made **within the policy**

14  **contract**, *to enter* into the transaction and pay for the insurance policy contract and renew such

15  policy contract each and every time the policy was up for renewal.

16  48.   ·All fraudulent deceit and false promises arose out of the implied and express terms of the

17  adhesive insurance policy contract entered into between plaintiff/insured and defendant, ACE and

18  Does 1 to 100.

19  49.     Plaintiff and other identified insureds on the insurance policy contract, reasonably and/or

20  justifiably relied on the promises and representations of Defendants, and each of them, when plaintiff

21  and other identified insureds within the policy, to his detriment, considered purchasing or renewing

22  the insurance policy contract and did purchase and renew the policy to cover him for business losses

23  losses, with defendants and each of them.

24  50.     Plaintiff was proximately caused detriment, damage and loss in that he paid policy premiums

25  and in return defendants, and each of them, did not perform on their contractual promises and

26  representations.

27  51.     Defendants knew their promises, representations, duties and obligations under the insurance

28  policy contract and those implied·in the contract, both in fact, and under California law, including but

1 | not limited to *Insurance Code* section 11850.2 *et seq.*, but failed to disclose and/or concealed that

2 | Plaintiff and other identified insureds would be subjected to wrongful, tortious, fraudulent, malicious

3 | and oppressive intentional and willful failure to perform and deliver on the contractual duties and

4 | promises at the time plaintiff entered into the insurance policy contract with defendants and each of

5 | them, including prior to and on or about March 17, 2020 (the active start date of the Business Owners

6 | insurance policy and coverage at issue).

7 | 52.      Further, the standardized Business insurance policy contract was an <u>adhesion</u> contract as

8 | defined under California law. The insurance policy contract was offered on a "take it or leave it

9 | basis," to plaintiff and other policy identified insureds, as well as including the general public.

10 | Plaintiff and other insureds on the policy were members of the general public who were offered this

11 | insurance policy contract by defendants and each of them (including ACE).   Plaintiff and other

12 | insureds, as well as the general public, were not in a position or could negotiate the terms of the

13 | insurance policy agreement. Plaintiff and other insureds were compelled to adhere to all of the

14 | policy's terms and conditions as drafted by ACE. At all times relevant therein plaintiff and other

15 | insureds, on the policy nor other members of the general public, were entitled to nor could alter or

16 | modify the terms of the ACE Business insurance policy by face to face negotiations or otherwise.

17 | 53.      The BUSINESS OWNERS PROPERTY LOSS AND PERSONAL PROPERTY LOSS

18 | insurance policy the terms of the insurance policy agreement were nearly identical to all other entities

19 | that offer similar business insurance policy coverage, thus there were no other reasonable insurance

20 | policy coverage alternatives in the marketplace.

21 | 54.      At all times, by the mere issuance of the insurance policy to plaintiff/insured, defendants

22 | and Does 1 to 100, as the insurer, *impliedly* represented its willingness to perform under the

23 | policy express and implied terms. No additional, affirmative representation that it will perform

24 | need be shown between plaintiff and defendants. *Miller v. National American Life Ins. Co. of*

25 | *Calif.* (1976) 54 Cal.App.3d 331, 338.

26 | 55.      As a direct and proximate result of the false promises, fraudulent deceit and concealment by

27 | Defendants, and each of them, of their obligations under the insurance policy contract, Plaintiff has

28 | been damaged as follows:

1    a) Plaintiff was forced to proceed with binding arbitration and incur the associated costs

2    and emotional distress associated with such proceedings including attorneys and expert fees and

3    he was denied benefits due under the policy in a time of medical need, and physical pain;

4    b) Plaintiff was forced to suffer other economic and consequential damages as referenced herein

5    and throughout this complaint in an amount to be shown at trial.

6    56.    At all times relevant herein, defendants and each of them, intended to injure, harm and damage

7    plaintiff.    Defendants, and each of them, intended the consequences described throughout this

8    complaint and that were substantially certain to result from its conduct, acts and omissions.

9    57.    The conduct of Defendants, and each of them, described in this complaint of deliberately and

10    calculatingly failing to provide the compensation which they knew was due to Plaintiff, scheming to

11    conspire and defraud Plaintiff, and committing actual fraudulent deceit against Plaintiff, and further

12    intentionally inflicting emotional distress upon Plaintiff, offering no settlement at all in light of

13    compelling medical evidence supporting that Plaintiff was entitled to the full policy benefits, while

14    well knowing their policy holder and insured was entitled to policy limits constitutes malice, fraud

15    and oppression under California *Civil Code* section 3294 and *Delgado v. Heritage Life Ins.*

16    *Co.,*(1984) 157 Cal. App. 3d 262, in that it was done with the intent to vex, injure, or annoy and with

17    willful and conscious disregard of the Plaintiff's rights and safety of plaintiff and deliberately in bad

18    faith, to deny him the prompt, and reasonable policy claim benefits to which he was entitled under the

19    insurance policy.  Defendants, and each of them, were aware of the consequences of its' conduct,

20    acts, omissions and representations and willfully and deliberately failed to avoid these consequences

21    to plaintiff/insured's detriment, damages and loss.  Defendants' acts, omissions and representations

22    showed a conscious course of conduct, firmly grounded in established company policy.  Further

23    defendants engaged in oppression in that they subjected plaintiff/an insured to cruel and unjust

24    hardship in conscious disregard of his rights.

25    58.    The acts, omissions and representations were all despicable.  Defendants, and each of them

26    conduct, acts, omissions and representations were mean, vile, base or contemptible that it would be

27    looked down upon and despised by reasonable people.  At all relevant times, Defendants, and each of

28    them, including insurance company's agents, employees, officers, directors and managing agents had

1   advanced knowledge of their employees, contractors, agents, managing agents, officers, directors

2   unfitness and acted with a conscious disregard of the rights and safety of plaintiff/an insured.    At all

3   relevant times, Defendants, and each of them, including insurance company's agents, employees,

4   officers, directors and managing agents acted with and had advanced knowledge of their employees,

5   contractors, agents, managing agents, officers, directors acts, omissions and representations or

6   thereafter ratified the wrongful, intentional, willful, unreasonable, reckless, careless, negligent,

7   oppressive, malicious, fraudulent, tortious and bad faith acts, omissions and representations of the

8   wrongful conduct, acts, omissions and representations of defendants and each of them, as described

9   throughout this complaint and/or ratified such wrongful acts, omissions and representations.

10  59.    All the aforesaid acts, omissions and representations were performed in an effort to discourage

11  Plaintiff from seeking the compensation due to him at a time Defendants, and each of them, knew

12  that the Plaintiff was financially vulnerable, and during his time of calamity. Thus, Plaintiff is entitled

13  to punitive and exemplary damages pursuant to *Civil Code* section 3294 and other California law, in

14  an amount appropriate to punish and make an example of Defendants, and each of them.

15

16  ////

17

18  ////

19

20  ////

21

22

23  ////

24

25

26  ////

27

28

PRAYER

WHEREFORE, Plaintiff prays for damages as against Defendants, and each of them, as follows:

    A.  For general pecuniary and compensatory damages for breach of the implied covenant of good faith and fair dealing including, but not limited to, injuries resulting from humiliation, mental anguish and emotional distress and litigation expenses and costs according to proof;

    B.  For compensatory and consequential damages according to proof for breach of contract;

    C.  For compensatory and consequential damages according to proof on all accounts;

    D.  For reasonable attorneys' fees in obtaining policy benefit incurred herein; for reasonable additional attorneys' fees; expert witness fees; incurred in the hit and run motorist litigation arising from the breach of covenant of good faith and fair dealing *in tort* (bad faith) cause of action;

    E.  For prejudgment interest in an amount to be proved at time of trial;

    F.  For costs of suit incurred herein;

    G.  For punitive and exemplary damages in an amount sufficient to punish, deter and make an example of Defendants, and each of them, as to the breach of the covenant of good faith and fair dealing *in tort* (bad faith) cause of action;

    H.  For punitive and exemplary damages in an amount sufficient to punish, deter and make an example of Defendants, and each of them as to the fraud cause of action.

    I.  For such other and further relief as this Court may deem just and proper.

Dated: June 11, 2021

                       LAW OFFICES OF GENE J. GOLDSMAN

                       By: _____

                              Gene J. Goldsman, Esq.
                              Attorney for Plaintiffs,
                              LOS ANGELES LAUNDRY, Inc., et al.

# EXHIBIT 1

POLICY NUMBER: D95321306

BUSINESSOWNERS
BP 12 01 08 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW.

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| D95321306 | 12-02-2020 | ACE Property And Casualty Insurance Company |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| LAUNDRY LOS ANGELES, INC | | Internal Users |

| CHANGES |
|---|
| Effective 12/2/2020 amend the Business Personal Property/ Impervements & Betlerments for location 1, Building1 to: $3,000,000 and for building 2: $5,000,000 |

| POLICY AMOUNT AND PREMIUM ADJUSTMENT | | | | | | |
|---|---|---|---|---|---|---|
| | Limits Of Insurance | | Premiums | | | |
| Coverage Description | Previous Limit Of Insurance | New Limit Of Insurance | Previous Premium | New Premium | **X** Add'l Premium | |
| | | | | | Return Premium | |
| Business Personal Property / Improvements & Betterments only<br><br>Location #1, Building #1 | $ 1,200,000 | $ 3,000,000 | $ 5,328 | $ 11,453 | $ 6,125 | |
| Business Personal Property / Improvements & Betterments only<br><br>Location #1, Building #2 | $ 500,000 | $ 5,000,000 | $ 2,520 | $ 17,588 | $ 15,068 | |

| OPTIONAL COVERAGES | | | | |
|---|---|---|---|---|
| The following optional coverages are added under this policy when designated by an "X" in the box(es) shown below. | | | **X** Add'l Premium | |
| | | | Return Premium | |
| | Limits Of Insurance | | | |
| Outdoor Signs (Location#1) | $ | | $ | |

| | | | |
|---|---|---|---|
| | Burglary and Robbery (Named Peril Endorsement only) | $                    Inside the Premises | $ |
| | | $                    Outside the Premises | |
| | Or | | |
| | Money and Securities | $                    Inside the Premises | $ |
| | | $                    Outside the Premises | |
| | Employee Dishonesty | $          each occurrence | $ |
| | Equipment Breakdown (Location #1, Building #1) | $ | $ |
| | Equipment Breakdown (Location #1, Building #2) | $ | $ |

| TOTAL PREMIUM ADJUSTMENTS | |
|---|---|
| PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE | |
| ADDITIONAL | RETURN |
| $  6,490 | $ |
| REMOVAL PERMIT | If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location. |

_____

**Authorized Representative Signature**

© Insurance Services Office, Inc., 2009                BP 12 01 08 10        □

# BUSINESSOWNERS LIABILITY ENHANCEMENTS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| LAUNDRY LOS ANGELES, INC | | | BOP47635a0716 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| SER | D95321306 | 03-17-2020 to 03-17-2021 | 12-02-2020 |
| Issued By (Name of Insurance Company) | | | |
| ACE Property And Casualty Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM**

### TABLE OF CONTENTS

| | Page |
|---|---|
| Supplementary Payments – Bail Bonds And Bonds To Appeal Judgments – No Sublimit | 2 |
| Medical Expenses – Three Years To Report Expenses | 2 |
| Non-Owned Watercraft Under 55 Feet | 2 |
| Non-Owned Aircraft | 2 |
| Damage To Property – Exception For Equipment Loaned Or Rented To Insured | 2 |
| Who Is An Insured – Subsidiaries Or Newly Acquired Or Formed Organizations | 3 |
| Who Is An Insured – Employees (Including For CPR and First Aid) And Volunteer Workers | 3 |
| Additional Insured – Lessor Of Leased Equipment | 4 |
| Additional Insured – Managers Or Lessors Of Premises | 4 |
| Additional Insured - Vendors | 5 |
| Additional Insured – Other Persons Or Organizations Pursuant To Contract Or Agreement | 6 |
| Damage To Premises Rented To You – $1,000,000 | 7 |
| Per Location General Aggregate Limit With Combined Total Aggregate Limit | 8 |
| Knowledge/Notice Of Occurrence | 9 |
| Bodily Injury, Including Resulting Mental Anguish | 9 |
| Coverage Territory, Limited Worldwide | 10 |
| Personal Injury, Including Discrimination, Harassment And Segregation | 10 |
| Unintentional Failure To Disclose Hazards | 10 |
| Other Insurance, Including Primary Provision | 10 |
| Waiver Of Subrogation Required By Contract | 11 |

This endorsement modifies the coverages provided under the Businessowners Coverage Form.

Notwithstanding anything to the contrary, the provisions of the Businessowners Coverage Form apply, except as provided in this endorsement. The titles of the various paragraphs of this endorsement are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**A. SUPPLEMENTARY PAYMENTS – BAIL BONDS AND BONDS TO APPEAL JUDGMENTS - NO SUBLIMIT**

In Section II - Liability, Paragraph A. Coverages, 1. f. Coverage Extension – Supplementary Payments, subparagraphs (1)(b) and (c) are replaced by the following:

(b) The cost of bail bonds, but only for bond amounts within the available limit of insurance. We do not have to furnish these bonds.

(c) The cost of bonds to appeal judgments or release attachments, but only for amounts within the available limit of insurance. We do not have to furnish these bonds.

**B. MEDICAL EXPENSES – THREE YEARS TO REPORT EXPENSES**

In Section II – Liability, Paragraph A. Coverages, 2. Medical Expenses, subparagraph a.(b) is replaced by the following:

**(b)** The expenses are incurred and reported to us within three years of the date of the accident; and

**C. NON-OWNED WATERCRAFT UNDER 55 FEET**

In Section II - Liability, Paragraph B. Exclusions, subparagraph (2) of Exclusion 1.g. Aircraft, Auto Or Watercraft is replaced by the following:

This exclusion does not apply to:

**(2)** A watercraft you do not own that is:

    **(a)** Less than 55 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**D. NON-OWNED AIRCRAFT**

In Section II - Liability, Paragraph B. Exclusions, the following exception is added to Exclusion 1.g. Aircraft, Auto or Watercraft in Section II – Liability:

This exclusion does not apply to an aircraft you do not own provided:

**1.** The pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**2.** It is rented with a trained, paid crew; and

**3.** It does not transport persons or cargo for a charge.

**E. DAMAGE TO PROPERTY - EXCEPTION FOR EQUIPMENT LOANED OR RENTED TO THE INSURED**

In Section II - Liability, Paragraph B. Exclusions, the following exception is added to Exclusion 1.k. Damage To Property:

Paragraphs (3) and (4) of this exclusion do not apply to "property damage" to equipment rented or loaned to the insured, provided such equipment is not being used to perform any operations at a construction job site.

**F. WHO IS AN INSURED - SUBSIDIARIES OR NEWLY ACQUIRED OR FORMED ORGANIZATIONS**

In Section II - Liability, Paragraph C. Who is an Insured is amended to include the following:

If there is no other insurance available, each of the following is also a Named Insured:

1. A subsidiary organization of the first Named Insured shown in the Declarations of which, at the beginning of the policy period and at the time of loss, the first Named Insured controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization; or

2. A subsidiary organization of the first Named Insured shown in the Declarations that the first Named Insured acquires or forms during the policy period, if at the time of loss the first Named Insured controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization.

**G. WHO IS AN INSURED - EMPLOYEES (INCLUDING CPR AND FIRST AID) AND VOLUNTEER WORKERS**

In **Section II - Liability**, Paragraph C. **Who is an Insured**, Paragraph 2.a. is replaced by the following:

2. Each of the following is also an insured:

    **a.** Your "employees" but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to any of your directors, managers, members, "executive officers" or partners (whether or not an "employee") or to any co-"employee" while such injured person is either in the course of his or her employment or while performing duties related to the conduct of your business;

            **(b)** To the brother, child, parent, sister or spouse of such injured person as a consequence of any injury described in Paragraph **(a)** above; or

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of any injury described in Paragraph **(a)** or **(b)** above.

        With respect to "bodily injury" only, the limitations described in Paragraph 2.a.**(1)** above do not apply to you or to your directors, managers, members, "executive officers", partners or supervisors as insureds. The limitations also do not apply to your "employees" as insureds, with respect to such damages caused by cardiopulmonary resuscitation or first aid services administered by such an "employee".

        **(2)** "Property damage" to any property owned, occupied or used by you or by any of your directors, managers, members, "executive officers" or partners (whether or not an "employee") or by any of your "employees". This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with the permission of the owner.

    **b.** Your "volunteer workers", but only while acting within the scope of their activities for you and at your direction.

**H. ADDITIONAL INSUREDS**

In **Section II - Liability**, Paragraph C. **Who is an Insured**, the following is added:

2. Each of the following is also an insured:

**LESSOR OF LEASED EQUIPMENT**

e.   Any person or organization from whom you lease equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization and only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

However, the insurance afforded to such additional insured:

(1) Only applies to the extent permitted by law; and

(2) Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**MANAGERS OR LESSORS OF PREMISES**

f.   Any person or organization from whom you lease premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

However, the insurance afforded to such additional insured:

(1) Only applies to the extent permitted by law; and

(2) Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

(1)  Any "occurrence" that takes place after you cease to be a tenant in such premises.

(2) Structural alterations, new construction or demolition operations performed by or for such additional insureds.

**VENDORS**

g.   Any person or organization who is a vendor of "your products", but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

However:

(1)  The insurance afforded to such vendor only applies to the extent permitted by law; and

(2)  If coverage provided to the vendor is required by a contract or agreement, the

insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

With respect to the insurance afforded to these vendors, the following additional exclusions apply:

(1) This insurance afforded the vendor does not apply to:

    (a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to the liability for damages that the vendor would have in the absence of the contract or agreement;

    (b) Any express warranty unauthorized by you;

    (c) Any physical or chemical change in the product made intentionally by the vendor;

    (d) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    (e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    (f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    (g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    (h) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        (i) The exceptions contained in Subparagraph (d) or (f); or

        (ii) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

With respect to the insurance afforded to these vendors, the following is added to Paragraph D. Liability And Medical Expenses Limits Of Insurance:

If coverage provided by the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

(1) Required by the contract or agreement; or

(3) Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This shall not increase the applicable Limits Of Insurance shown in the Declarations.

**OTHER PERSONS OR ORGANIZATIONS PURSUANT TO CONTRACT OR AGREEMENT**

h.  Any persons or organizations that you are required by a contract or agreement to provide with such insurance as is afforded by this policy.  However, such a person or organization is an insured only:

   (1)  To the extent such contract or agreement requires the additional insured to be afforded status as an insured; and

   (2)  For activities that did not occur, in whole or in part, before the execution of the contract or agreement.

No person or organization is an insured under this provision:

   (1)  That is more specifically identified under any other provision of Paragraph **C. Who Is An Insured** (regardless of any limitation applicable thereto).

   (2)  With respect to any assumption of liability in a contract or agreement. This limitation does not apply to the liability for damages the additional insured would have in the absence of the contract or agreement.

However, the insurance afforded to such persons or organizations:

   (1)  Only applies to the extent permitted by law; and

   (2)  Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

The following is added at the end of Paragraph **C. Who Is An Insured**:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

However, no person or organization is an insured with respect to the:

a.  Ownership, maintenance or use of any assets; or

b.  Conduct of any person or organization whose assets, business or organization;

any Named Insured acquires, either directly or indirectly, for any:

(1)  "Bodily injury" or "property damage" that occurred; or

(2)  "Personal and advertising injury" arising out of an offense first committed;

in whole or in part, before such acquisition is executed.

With respect to the insurance afforded to the persons or organizations described in Paragraphs e., f., and **h.** above, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance**:

The most we will pay on behalf of such person or organization is the amount of insurance:

      (1)   Required by the contract or agreement; or

      (2)   Available under the applicable Limits Of Insurance shown in the Declarations;

      whichever is less.

      This shall not increase the applicable Limits Of Insurance shown in the Declarations.

**I.   DAMAGE TO PREMISES RENTED TO YOU – $1,000,000**

      In Section II - Liability, Paragraph D. Liability and Medical Expenses Limits of Insurance, Paragraphs 3, and 4, are deleted and replaced with the following:

      **3.**   Subject to the **Liability And Medical Expenses Limits Of Insurance**, the most we will pay under Business Liability Coverage for damages because of "property damage" to any one premises while rented to you or while temporarily occupied by you with permission of the owner is $1,000,000.

      **4.**   **Aggregate Limits**

         The most we will pay for:

         **a.**   All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

         **b.**   All:

            (1)   "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

            (2)   Plus medical expenses;

            (3)   Plus all "personal and advertising injury" caused by offenses committed;

            is twice the Liability and Medical Expenses Limit.

         The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**J.   PER LOCATION GENERAL AGGREGATE LIMIT WITH COMBINED TOTAL AGGREGATE LIMIT**

      In Section II - Liability, Paragraph D. Liability and Medical Expenses Limits of Insurance, the following is added:

      **1.**   Subject to the Combined Total Aggregate Limit shown in the Declarations, for the sum of all damages that the insured becomes legally obligated to pay for all "bodily injury" and "property damage" caused by "occurrences" under Paragraph A.1. Business Liability, and for all medical expenses caused by accidents under Paragraph A.2. Medical Expenses, which can be attributed only to a single "location":

   a. A separate Location General Aggregate Limit will apply to each "location", and that limit is equal to the Other than Products/Completed Operations Aggregate Limit shown in the Declarations.

   b. The separate Location General Aggregate Limit is the most we will pay for the sum of all damages for "bodily injury" or "property damage" under Paragraph A.1. Business Liability, except in connection with "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph A.2. Medical Expenses; regardless of the number of:

      (1) Insureds;

      (2) Claims made or "suits" brought; or

      (3) Persons or organizations making claims or bringing "suits".

   c. Any payments made under Paragraph A.1. or under Paragraph A.2. Medical Expenses shall reduce the separate Location General Aggregate Limit for that "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce the separate Location General Aggregate Limit for any other "location".

   d. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable separate Location General Aggregate Limit.

2. Subject to the Combined Total Aggregate Limit shown in the Declarations, for the sum of all damages that the Insured becomes legally obligated to pay for all "bodily injury" or "property damage" caused by occurrences under Paragraph A.1. Business Liability and for all medical expenses caused by accidents under Paragraph A.2., which cannot be attributed only to operations at a single "location".

   a. Any payments made under Paragraph A.1. Business Liability for damages or under Paragraph A.2. for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

   b. Such payments shall not reduce the separate Location General Aggregate Limit applicable to a single "location".

3. Subject to the separate Location General Aggregate Limit and all other applicable limits, the Combined Total Aggregate Limit shown in the Declarations is the most we will pay for the combined sum of amounts described above, regardless of the number of "locations".

4. Any payments we make for "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit regardless of the number of "locations", and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the separate Location General Aggregate Limit applicable to a single "location."

5. As used in this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

6. The provisions of Paragraph **D. Liability and Medical Expenses Limits Of Insurance** not otherwise modified by this endorsement shall continue to apply as stipulated.

**K. KNOWLEDGE/NOTICE OF OCCURRENCE**

   In Section II - Liability, Paragraph **E. Liability and Medical Expenses General Conditions, 2. Duties In the Event Of Occurrence, Offense, Claim or Suit** is amended to include the following:

e.   Knowledge of an "occurrence" or offense by an agent or "employee" of the insured will not constitute knowledge by the insured, unless an "executive officer" (whether or not an "employee") of any insured or an "executive officer's" designee knows about such "occurrence" or offense.  Failure of an agent or "employee" of the insured, other than an "executive officer" (whether or not an "employee") of any insured or an "executive officer's" designee, to notify us of an "occurrence" or offense that such person knows about will not affect the insurance afforded to you.

f.   If a claim or loss does not reasonably appear to involve this insurance, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the insured gives us immediate notice as soon as the insured is aware that this insurance may apply to such loss or claim.

## L.   BODILY INJURY, INCLUDING RESULTING MENTAL ANGUISH

In **Section II - Liability**, Paragraph **F. Liability and Medical Expenses Definitions**, paragraph 3. is deleted and replaced with the following:

3.   "Bodily injury" means physical:

a.   Injury;

b.   Sickness; or

c.   Disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time.  All such loss shall be deemed to occur at the time of the physical injury, sickness or disease.

## M.   COVERAGE TERRITORY, LIMITED WORLDWIDE

In **Section II - Liability**, Paragraph **F. Liability and Medical Expenses Definitions**, paragraph 4. is deleted and replaced by the following:

4.   "Coverage territory" means all parts of the world.

However, "coverage territory" does not include any:

a.   "Bodily injury" or "property damage" that takes place or any offense committed outside of the United States of America (including its possessions and territories), Canada and Puerto Rico, unless the insured's responsibility to pay damages is determined by a "suit" on the merits that is brought in the United States of America (including its possessions and territories), Canada or Puerto Rico; or

b.   Injury or damage in connection with any "suit" brought outside the United States of America (including its possessions and territories), Canada and Puerto Rico.

## N.   PERSONAL INJURY, INCLUDING DISCRIMINATION, HARASSMENT AND SEGREGATION

In **Section II - Liability**, Paragraph **F. Liability and Medical Expenses Definitions**, paragraph 14. is amended to include the following:

h.   Discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex unless committed by or at the direction of any "executive officer", director, stockholder, partner or member of the insured.

O.  UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

In Section III – Common Policy Conditions, Paragraph C. Concealment, Misrepresentation or Fraud is amended to include the following additional paragraph:

Unintentional failure of an "employee" of the insured to disclose a hazard or other material information will not violate this condition, unless an "executive officer" (whether or not an "employee") of any insured knows about such hazard or other material information.

P.  OTHER INSURANCE, INCLUDING PRIMARY PROVISION

In Section III – Common Policy Conditions, Paragraph H. Other Insurance, subparagraphs 2. and 3. are replaced by the following:

H.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this insurance, our obligations are limited as follows:

1.  Primary Insurance

This insurance is primary except when Paragraph 2 below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph 3 below.

2.  Excess Insurance

a.  This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is insurance that applies to "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(c) If the loss arises out of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section II.B. Exclusions, 1. Applicable to Business Liability Coverage; or

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

b.  When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

c.  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance;

(2)  The total of all deductible and self-insured amounts under all that other insurance.

    **d.**  We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

  **3.**  **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**Q.**  **WAIVER OF SUBROGATION REQUIRED BY CONTRACT**

In **Section III – Common Policy Conditions**, Paragraph **K. Transfer of Rights of Recovery Against Others To Us**, subparagraph **2.** is replaced by the following:

  **2.**  Applicable to Businessowners Liability Coverage:

We will waive the rights of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the insured's rights to recover all or part of any payment made under this Coverage Part have not been waived, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This paragraph does not apply to Medical Expenses Coverage.

All other terms and conditions of the policy remain unchanged.

CHUBB

## MARIJUANA EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:
### BUSINESSOWNERS COVERAGE FORM

**A.** **Section I – Property** is amended as follows:

1. The following is added to Paragraph **A.2. Property Not Covered:**

   a. "Marijuana".

2. Coverage under this Policy does not apply to that part of Business Income loss or Extra Expense incurred due to a suspension of your "operations" which involve the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana".

3. Paragraphs **A.1.** and **A.2.** above do not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

   a. Ingestion;

   b. Inhalation;

   c. Absorption; or

   d. Consumption.

**B.** The following exclusion is added to **Section II – Liability:**

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

   a. The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

   b. The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or

2. "Property damage" to "marijuana".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or 'property damage', or the offense which caused the "personal and advertising injury', involved that which is described in Paragraph **B.1.** or **B.2.** above.

   However, this exclusion does not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

   a. Ingestion;

   b. Inhalation;

   c. Absorption; or

   d. Consumption.

**C.** The following changes apply only to Electronic Data Liability – Broad Coverage Endorsement **BP 05 96** if it is attached to this Policy:

The following exclusion is added to **Section II – Liability:**

This insurance does not apply to:

"Loss of Electronic Data":

    **1.** Arising out of, caused by, or attributable to, whether in whole or in part, the following:

        **a.** The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

        **b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or

    **2.** With respect to any "electronic data" that is used in the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "electronic data incident" which caused the "loss of electronic data" involved that which is described in Paragraph **C.1.** or **C.2.** above.

    However, this exclusion does not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:

        **a.** Ingestion;

        **b.** Inhalation;

        **c.** Absorption; or

        **d.** Consumption.

**D.** For purposes of this endorsement, the following definition applies:

    "Marijuana":

    **1.** Means:

    Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

    **2.** Paragraph **D.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

        **a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

        **b.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

            **(1)** Resin, oil or wax;

            **(2)** Hash or hemp; or

            **(3)** Infused liquid or edible marijuana;

        whether derived from any plant or part of any plant set forth in Paragraph **D.2.a.** above or not.

All other terms and conditions remain unchanged.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured LAUNDRY LOS ANGELES, INC | | | Endorsement Number TRIA11C0115 |
|---|---|---|---|
| Policy Symbol SER | Policy Number D95321306 | Policy Period 03-17-2020  TO  03-17-2021 | Effective Date of Endorsement 03-17-2020 |
| Issued By (Name of Insurance Company) ACE PROPERTY & CASUALTY INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year   , the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: **$620**.

Authorized Representative

TRIA11c (1/15)          Includes copyrighted material of Insurance Services office, Inc., with its permission.

POLICY NUMBER: D95298655

BUSINESSOWNERS
BP 12 01 08 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW.

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| D95298655 | 12-02-2020 | ACE Fire Underwriters Insurance Company |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| CHAI FIVE LAUNDRY SERVICES LLC | | Internal Users |

**CHANGES**

Amended Limits to the following: Loc 1 - BPP $3,000,000; Building $1,120,000, Loc 2 - BPP $3,000,000, Building $760,000.

| POLICY AMOUNT AND PREMIUM ADJUSTMENT | | | | | | |
|---|---|---|---|---|---|---|
| | Limits Of Insurance | | Premiums | | X | Add'l Premium |
| Coverage Description | Previous Limit Of Insurance | New Limit Of Insurance | Previous Premium | New Premium | | Return Premium |
| "Building only" Location #1, Building #1 | $ 1,800,000 | $ 1,120,000 | $ 4,380 | $ 2,948 | $ -1,432 | |
| Business Personal Property / Improvements & Betterments only Location #1, Building #1 | $ 1,120,000 | $ 3,000,000 | $ 7,325 | $ 16,743 | $ 9,418 | |
| Business Personal Property / Improvements & Betterments only Location #2, Building #1 | $ 1,200,000 | $ 3,000,000 | $ 7,260 | $ 15,600 | $ 8,340 | |

| OPTIONAL COVERAGES | | |
|---|---|---|
| The following optional coverages are added under this policy when designated by an "X" in the box(es) shown below. | | Add'l Premium |
| | X | Return Premium |

|  | Limits Of Insurance | |  |
|---|---|---|---|
| Outdoor Signs (Location#1) | $ | | $ |
| Outdoor Signs (Location#2) | $ | | $ |
| Burglary and Robbery (Named Peril Endorsement only) | $ | Inside the Premises | $ |
| | $ | Outside the Premises | |
| Or | | | |
| Money and Securities | $ | Inside the Premises | $ |
| | $ | Outside the Premises | |
| Employee Dishonesty | $ | each occurrence | $ |
| Equipment Breakdown (Location #1, Building #1) | $ | | $ |
| Equipment Breakdown (Location #2, Building #1) | $ | | $ |

| TOTAL PREMIUM ADJUSTMENTS | |
|---|---|
| PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE | |
| ADDITIONAL | RETURN |
| $  4,819 | $ |

| REMOVAL PERMIT | If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location. |
|---|---|

_____

**Authorized Representative Signature**

© Insurance Services Office, Inc., 2009           BP 12 01 08 10     ☐



December 29, 2020

LAUNDRY LOS ANGELES, INC
6032 SHULL ST
BELL GARDENS, CA 90201

### NOTICE OF CONDITIONAL RENEWAL

Re:   Policy # SERCAD953213063N
      Type of Policy: Business Owners
      Insured: LAUNDRY LOS ANGELES, INC
      Insurance Co: Pacific Employers Insurance Company
      Expiration Date: 03-17-2021 at 12:01 a.m. at the address set forth in the Declarations

Dear Insured:

Thank you for selecting Chubb. We value your business and look forward to continuing our relationship.

This notice is to inform you that when the above referenced policy expires, we will be making the following changes to your renewal policy:

- The following exclusion[s] will be added to your policy due to COVID-19 and/or other hazards:
    - BOP43862 (0914) POLLUTION, ORGANIC PATHOGEN, SILICA, ASBESTOS AND LEAD EXCLUSION WITH HOSTILE FIRE AND HUMAN FOOD PRODUCT EXCEPTIONS
    - BOP49665 (0817) COMMUNICABLE OR INFECTIOUS DISEASES EXCLUSION - TOTAL

- In addition, the following additional changes will be made:

    - The following forms will be added to your policy:
        - BOP48528 (1016) ASBESTOS, SILICA OR SIMILAR COMPOUNDS, INCLUDING MIXED DUST EXCLUSION
        - BOP48573 (0117) LEAD EXCLUSION
        - BOP51381 (1018) OPIOIDS GOODS OR PRODUCTS EXCLUSION - TOTAL
        - BP0523 (0115) CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

    - The following forms were removed from your policy:
        - BOP47635 (0716) BUSINESSOWNERS LIABILITY ENHANCEMENTS ENDORSEMENT
        - BOP47663 (0117) BUSINESSOWNER PROPERTY ENHANCEMENTS

- Your Policy will include a reduction to your Personal Property Standard limit from $3,000,000 to $1,236,000.
- Your Policy will include a reduction to your Personal Property Standard limit from $5,000,000 to $515,000.

# CHUBB°

- Your Policy will include a reduction to your Customers Goods Enhancement limit from $3,000,000 to $1,236,000.

If you have any questions or concerns regarding these changes, we strongly encourage reaching out directly to your insurance Agent.

A copy of this notice is being provided to your Agent; please contact them directly with any questions regarding your policy.

Thank you again for selecting Chubb.

Jeffrey A. Updyke
Vice President, Chubb Group
Division President, Chubb Small Business

cc:
RSC INSURANCE BROKERS INC
700 AIRPORT BLVD, #300
BURLINGAME, CA 94010-0000

CHUBB°

## IMPORTANT STATE-SPECIFIC INFORMATION

**NJ:** As required by the New Jersey Insurance Department, we advise that failure to pay the renewal premium by the date it is due will result in termination of the policy for nonpayment of premium.

**NY:** The first named insured or his/her authorized agent/broker may request in writing loss information with respect to this policy and previous policies we have written for you. We will provide this information within 10 days from the date we receive your request.

**UT:** Failure to pay the renewal premium by the expiration date shown above, extinguishes your right to renewal.

**If you have any questions regarding this notice or if you would like any additional information you should reach out to your agent.**

PACIFIC EMPLOYERS INSURANCE COMPANY
436 WALNUT STREET
PHILADELPHIA, PA 19106

Named Insured: LAUNDRY LOS ANGELES, INC                    Policy Number: SERCAD953213063N

This page is separate and independent from the notice given.
We are informing you that the following parties were notified of this action.

**PARTIES NOTIFIED**

Named Insured
LAUNDRY LOS ANGELES, INC
6032 SHULL ST
BELL GARDENS, CA 90201

Producer
RSC INSURANCE BROKERS INC
700 AIRPORT BLVD, #300
BURLINGAME, CA 94010-0000

 **CHUBB**          **ACE Property And Casualty Insurance Company**          **Businessowners Policy Declarations**

**This Policy is issued by the stock insurance company listed above ("Insurer").**

AT LEAST ONE OF THE ENDORSEMENTS IS A CLAIMS MADE AND REPORTED COVERAGE SECTION. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS COVERAGE SECTION COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD. PLEASE READ THIS COVERAGE SECTION CAREFULLY. THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.

**Policy Number:** D95321306
Renewal of:          New

**Named Insured & Principal Address:**          **Policy Period:**          From 03-17-2020 To 03-17-2021
LAUNDRY LOS ANGELES, INC                                                     12:01 AM* Standard Time at your mailing
6032 Shull St                                                                address shown
Bell Gardens, CA 90201

**ADVANCED PREMIUM: $9,951.00**

Admitted Status: Admitted                    Auditable Status: Yes
                                             Auditable Period: Annual

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE INSURANCE AS STATED IN THIS POLICY

**Business Description:** Services

Section 1.    **PROPERTY**

| Coverage | Limit of Insurance | Deductible | Revised Period of Indemnity | Premium |
|---|---|---|---|---|
| Business Income and Extra Expense Limit of Insurance | Actual Loss Sustained | 72 hours | 12 Months | $0 |

Described Premises: 6032 Shull St, Bell Gardens, CA 90201

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 1 | Business Personal Property | $1,200,000 | $500 | Replacement Cost | $5,328.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 72 hours/$500 | $233 |

**WIND COVERAGE**

Wind Deductible Percentage                          N /A
Wind Deductible Dollar Amount                       $500

Wind Excluded                                       No
**Wind Premium:**                                   **Included**

Described Premises: 6032 Shull St, Bell Gardens, CA 90201

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 1 | Business Personal Property | $500,000 | $500 | Replacement Cost | $2,520.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 72 hours/$500 | $133 |

**WIND COVERAGE**

Wind Deductible Percentage                          N /A
Wind Deductible Dollar Amount                       $500

Wind Excluded                                       No
**Wind Premium:**                                   **Included**

**ADDITIONAL COVERAGES (Optional)**

| Prem. No. | Build. No. | Coverage(s) | Limit Of Insurance | Deductible | Premium |
|---|---|---|---|---|---|

| 1 | 1 | Business Income From Dependent Properties | $5,000 | $500 | $0 |
|---|---|---|---|---|---|
| 1 | 2 | Business Income From Dependent Properties | $5,000 | $500 | $0 |
| 1 | 1 | Outdoor Property | $2,500 | $500 | $0 |
| 1 | 2 | Outdoor Property | $2,500 | $500 | $0 |
| 1 | 1 | Valuable Papers And Records | $10,000 | $500 | $0 |
| 1 | 2 | Valuable Papers And Records | $10,000 | $500 | $0 |
| 1 | 1 | Accounts Receivable | $10,000 | $500 | $0 |
| 1 | 2 | Accounts Receivable | $10,000 | $500 | $0 |
| 1 | 1 | Specified Business Personal Property Temporarily Away From Premises | $0 | $500 | $0 |
| 1 | 2 | Specified Business Personal Property Temporarily Away From Premises | $0 | $500 | $0 |

Total Terrorism (TRIA) Premium:          $195

Total Property Premium:          $8,717.00

Section 2.   **LIABILITY**

Described Premises: 6032 Shull St, Bell Gardens, CA 90201

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CC |
| 1 | **Industrial Laundries** | 09501 | **Gross Sales** | 1,500,000 | $966 | 0 |

Described Premises: 6032 Shull St, Bell Gardens, CA 90201

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CC |
| 1 | **Industrial Laundries** | | **Gross Sales** | 1,500,000 | $0 | 0 |

**LIMITS**
Other than Products/Completed Operations Aggregate          $2,000,000
Products/Completed Operations Aggregate          $2,000,000
Liability and Medical Expenses          $1,000,000          Per Occurrence
Damage to Premises Rented to You          $1,000,000          Any One Premises
Medical Expense          $5,000          Per Person
Combined Total Aggregate          $2,000,000          All Locations Combined

Item C.   **OPTIONAL COVERAGES (LIABILITY)**

**PRIVACY LIABILITY & DATA BREACH**

**LIMITS**
Privacy Liability Each Claim Limit          $25,000

| | |
|---|---|
| Privacy Liability Aggregate | $25,000 |
| Data Breach Fund Each Claim | $10,000 |
| Data Breach Aggregate | $10,000 |
| Maximum Policy Aggregate Limit of Liability | $35,000 |
| Retention | $1,000 |
| Retroactive Date: | 03-17-2020 |

**Total Data Breach Liability Premium: $83**

**Total Privacy Liability Premium: $40**

| | |
|---|---|
| **Total Terrorism (TRIA) Premium:** | **$195** |
| **Total General Liability Premium:** | **$1,234** |
| **Total Policy Premium:** | **$9,951.00** |

Item E.  **COVERAGE FORMS**

| Form Number | Edition | Title |
|---|---|---|
| BOP43591c | 1117 | BUSINESSOWNERS POLICY DECLARATIONS |
| CC1K11H | 0314 | SIGNATURES |
| BP0003 | 0713 | BUSINESSOWNERS COVERAGE FORM |
| BOP43603 | 0814 | EXCLUSION-GENETICALLY MODIFIED ORGANISMS |
| BOP43830 | 0614 | LEAD EXCLUSION |
| ᴐOP45202 | 0215 | PRIVACY LIABILITY AND DATA BREACH FUND ENDORSEMENT |
| BOP47635a | 0716 | BUSINESSOWNERS LIABILITY ENHANCEMENTS ENDORSEMENT |
| BP0453 | 0713 | WATER BACK-UP AND SUMP OVERFLOW |
| BP0501 | 0702 | CALCULATION OF PREMIUM |
| BP0517 | 0106 | EXCLUSION - SILICA OR SILICA-RELATED DUST |
| BP0595 | 0514 | ELECTRONIC DATA LIABILITY - LIMITED COVERAGE |
| BP0598 | 0713 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| BP1407 | 0110 | BUSINESS INCOME AND EXTRA EXPENSE - REVISED PERIOD OF INDEMNITY |
| BP1486 | 0713 | COMMUNICABLE DISEASE EXCLUSION |
| BP1506 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION (PERSONAL AND ADVERTISING INJURY ONLY) |
| BOP47638 | 0316 | CUSTOMER'S GOODS ENHANCEMENT |
| BOP47643 | 0316 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| BOP47663b | 0117 | BUSINESSOWNER PROPERTY ENHANCEMENTS |
| ALL20887 | 1006 | ACE PRODUCER COMPENSATION PRACTICES AND POLICIES |

| ILP001 | 0104 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| LL42490B | 0716 | U.S. FOREIGN ACCOUNT TAX COMPLIANCE ACT ("FATCA") |
| ALL21101 | 1106 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| BOP49269 | 0517 | PERIOD OF RESTORATION DEFINITION – WAITING PERIOD AMENDED |
| BOP50397 | 0518 | MARIJUANA EXCLUSION |
| ALL43826a | 0716 | APPLICATION SUPPLEMENT STATE FRAUD WARNINGS |
| TRIA11c | 0115 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| BP0155 | 0517 | CALIFORNIA CHANGES |
| BP0686 | 0517 | CALIFORNIA - HIRED AUTO AND NON-OWNED AUTO LIABILITY |

Item F.   Notice under this **Policy** shall be given to:
Chubb North America Claims
P.O. Box 5122
Scranton, PA    18505-0554
Toll Free: 844-539-3801
ACECRS-CLAIMS@chubb.com

Item G.   Producer Name and Mailing Address

UNIQUE INSURANCE SERVICE, INC.
737 SOUTHPOINT BLVD #F
PETALUMA, CA 94954-0000

Item H.   Producer Code: 03166C

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be signed by its President and Secretary, and countersigned by a duly authorized representative of the **Insurer**.

DATE:    03-17-2020

_____
Authorized Representative

## SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| LAUNDRY LOS ANGELES, INC | | | CC1K11H0314 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| SER | D95321306 | 03-17-2020 TO 03-17-2021 | 03-17-2020 |
| Issued By (Name of Insurance Company) | | | |
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract,

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

CC-1K11h (03/14)

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section II – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

© Insurance Services Office, Inc., 2012

(5) Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money And Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

i. "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph i. does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section I – Property.

**4. Limitations**

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this policy;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2012

**(b)** Subject to Paragraph (3)(a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph (4). Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs d.(1) through d.(7).

(1) For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2) We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

(a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(i) A cause of loss listed in Paragraph (2)(a) or (2)(b);

(ii) One or more of the "specified causes of loss";

(iii) Breakage of building glass;

(iv) Weight of people or personal property; or

(v) Weight of rain that collects on a roof.

(3) This Additional Coverage – Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

(5) If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

(8) The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs d.(1) through d.(7).

e. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

f. **Business Income**

(1) **Business Income**

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(i) The portion of the building which you rent, lease or occupy;

(ii) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(iii) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

© Insurance Services Office, Inc., 2012   BP 00 03 07 13

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

(i) Means payroll expenses for all your employees except:

i. Officers;

ii. Executives;

iii. Department Managers;

iv. Employees under contract; and

v. Additional Exemptions shown in the Declarations as:

● Job Classifications; or

● Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 60 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**g. Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(a) The portion of the building which you rent, lease or occupy;

(b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f. Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

© Insurance Services Office, Inc., 2012
BP 00 03 07 13

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

© Insurance Services Office, Inc., 2012

(3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

    (a) You were required to comply with before the loss, even when the building was undamaged; and

    (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

    (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

    (a) We will not pay for the Increased Cost of Construction:

        (i) Until the property is actually repaired or replaced, at the same or another premises; and

        (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

    (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

© Insurance Services Office, Inc., 2012

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

(a) Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

(b) Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

(i) Water supply services;

(ii) Wastewater removal services;

(iii) Communication supply services; or

(iv) Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

(6) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

(b) Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(7) The Business Income coverage period, as stated in Paragraph (6), does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

(8) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

© Insurance Services Office, Inc., 2012  BP 00 03 07 13

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (3) above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

 © Insurance Services Office, Inc., 2012

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

(7) This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

r. **Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

(1) The coverage described in Paragraphs r.(2) and r.(6) only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire; or

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.